IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

| | | |
|---|---|---|
| JUSTIN DANIELL,<br>Institutional ID No. 1934171,<br>SID No. 5977646,<br>Previous TDCJ No. 1356020<br><br>Plaintiff,<br><br>v.<br><br>MICHEAL HOUSE, et al.,<br><br>Defendants. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | CIVIL ACTION NO. 5:19-CV-196-BQ |

## REPORT AND RECOMMENDATION AND ORDER OF TRANSFER

This case was transferred to the magistrate judge by order dated September 26, 2019. ECF No. 6. In accordance with said order, the undersigned conducted preliminary screening as described in 28 U.S.C. §§ 1915(e)(2) and 1915A(b) and determined that the following claims asserted by pro se Plaintiff Justin Daniell survive preliminary screening: (1) excessive force under the Eighth Amendment against Texas Department of Criminal Justice (TDCJ) Correctional Officers (C.O.s) Gage Patrick and Javier Diaz; (2) failure to protect against Sergeant Christopher Haynes; and (3) an unconstitutional work assignment claim against C.O.s John Cooper, Kerry Chance, and Blanchard Chery.[1] ECF No. 15. Consequently, the Court entered an order requiring Defendants to answer or otherwise plead to Daniell's claim. *Id.*[2] Defendants Chance, Chery,

---

[1] Daniell alleges the incidents forming the bases of his claims occurred at TDCJ's Price Daniel Unit in Snyder, Texas. ECF No. 1, at 7–8.

[2] The Court entered this order February 25, 2020. ECF No. 15. Although most of the Defendants answered on March 27, 2020 (ECF No. 21), the Office of Attorney General subsequently advised the Court that TDCJ no longer employed Defendant Gage Patrick. ECF No. 19. Thus, the Court entered a Sealed Order for Service directing the United States Marshal (USM) to effect service on Defendant Patrick within thirty days from the date of the order. ECF No. 23. The USM served Defendant Patrick on April 24, 2020 (ECF No. 28), and he answered within the time provided under Fed. R. Civ. P. 12. ECF No. 27.

1

Cooper, Diaz, and Haynes filed their Answer on March 27, 2020 (ECF No. 21), and Defendant Patrick filed his Answer on May 15, 2020. ECF No. 27. As of today's date, all parties have not consented to jurisdiction by the magistrate judge. Upon review of Defendants' Answers, it is the opinion of the undersigned that this matter must be transferred to the district judge for further proceedings.

## I.     Discussion

The undersigned previously found that Daniell's claims for excessive force, failure to protect (i.e., bystander liability), and unconstitutional work assignment survive preliminary screening.[3] *See* Order to Answer 19–20, ECF No. 15. The Court addresses each claim below.

### A. Use of Force

Daniell's use of force claim arises under the Eighth Amendment. To establish a constitutional violation for excessive use of force by a prison official, a plaintiff must show that the defendant unnecessarily and wantonly inflicted pain. *See Whitley v. Albers*, 475 U.S. 312, 319–21 (1986). Whether an official's use of force is unnecessary or wanton depends on if the "force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 7 (1992) (citing *Whitley*, 475 U.S. at 320–21). In *Hudson*, the Supreme Court emphasized that a plaintiff must establish both a subjective and objective component. Specifically, a plaintiff must demonstrate that (1) an official acted with a "sufficiently culpable state of mind" and (2) the alleged wrongdoing was objectively "harmful enough" to establish a constitutional violation. *Id.* at 8 (quoting *Wilson v. Seiter*, 501 U.S. 294, 298, 303 (1991)). Factors relevant to this determination include, but are not limited to,

---

[3] The Court concluded that Daniell's claims for deliberate indifference to serious medical needs, retaliation, and vicarious liability, as well as for failure to resolve grievances, failed to state a claim for relief and dismissed them through the same order. *See* ECF Nos. 15, 16.

the following: (1) the extent of the injury suffered; (2) the need for application of force; (3) the relationship between that need and the amount of force used; (4) the threat reasonably perceived by the responsible officers; and (5) any efforts officers made to temper the severity of a forceful response. *See id.* at 7; *Baldwin v. Stalder*, 137 F.3d 836, 838 (5th Cir. 1998) (citing *Hudson v. McMillian*, 962 F.2d 522, 523 (5th Cir. 1992)).

Daniell contends that on August 15, 2018, "during 7:00 p.m. count, on K wing, which is located on 4 building," he began suffering a seizure which caused him to experience "blurred vision, slurred speech, and an inability to make his body move and function properly." Compl. 8, ECF No. 1.[4] Consequently, Daniell claims he could not sign a lay-in slip that C.O. Cooper asked him to sign. *Id.* According to Daniell, C.O. Cooper queried him about his condition, and then directed Daniell "to walk to a nearby table." *Id.*; Tr. 2:04:10–:05:08.[5] Daniell avers that C.O. Cooper contacted his superior by radio, and Sergeant Haynes arrived. Compl. 8; Tr. 2:04:10–:05:08. C.O. Cooper allegedly ordered Daniell "to step outside the wing to the area in front of the picket." Compl. 8. Daniell asserts he complied, but had trouble moving. *Id.*; Tr. 2:04:10–:05:08. Daniell testified that Sergeant Haynes then ordered Daniell to face the wall and place his hands behind his back. Tr. 2:06:24–:07:35. Daniell apparently complied and was cuffed. *Id.* Daniell maintains that Sergeant Haynes instructed C.O. Cooper to begin video recording the incident. *Id.*

Daniell claims that after C.O. Cooper began filming, Sergeant Haynes ordered "Daniell to walk to the line control building, a distance of over 100 yards." Compl. 8; Tr. 2:06:24–:07:35.

---

[4] Page citations to Daniell's pleadings refer to the electronic page number assigned by the Court's electronic filing system.

[5] The Court originally set, and began, a *Spears* hearing on December 3, 2019. ECF No. 11. Because of a power outage at the courthouse, however, the Court was unable to complete the hearing, and therefore resumed it on December 17, 2019. ECF No. 12. Citations to the December 3 hearing are reflected as "Tr." and citations to the December 17 hearing are reflected as "Tr. II."

C.O. Patrick allegedly escorted Daniell on his left, and C.O. Victor Afolayan[6] flanked Daniell's right side. Compl. 9. Daniell avers that because of the ongoing seizure, he had trouble walking, but that the officers construed his actions as resisting. Tr. 2:07:36–:49. After "exiting 4 building," Daniell contends that "[a] sharp object became imbedded in [his] foot," causing him to stop walking; C.O.s Patrick and Afolayan, however, again ordered him to stop resisting the escort and keep moving. Compl. 9; Tr. 2:10:00–:59. At the *Spears* hearing, Daniell further stated that C.O. Patrick began gripping Daniell's arm tightly, and Daniell concedes he "jerked" his arm away from C.O. Patrick. Tr. 2:10:00–:59.

In response, Daniell asserts that, although already cuffed, C.O. Patrick nevertheless: slammed Daniell down to his knees; pressed his knee into Daniell's back; and pushed Daniell face-first into the concrete, while C.O. Patrick pressed his arms on Daniell's shoulders. Tr. 2:12:00–:13:52. Daniell alleges that his face skidded across the concrete and that when he tried to raise his head, C.O. Patrick pushed his face back down. *Id.* From this initial use of force, Daniell maintains that he suffered a broken nose, busted upper lip, cracked left front tooth, a laceration above his right eye that required stitches, abrasions to his forehead, upper lip, and knees that left permanent scars, and a "slight umbilical hernia."[7] Tr. 2:14:00–:58.

Daniell alleges that C.O. Diaz subsequently arrived and, while Daniell was still on the ground, pushed his knee into Daniell's back. Tr. 2:15:00–:17:29. According to Daniell, C.O. Diaz bent his wrists for a prolonged period and fractured his right wrist and caused abrasions as a result.[8]

---

[6] Daniell does not name C.O. Afolayan as a defendant in this action.

[7] TDCJ provided a video of the incident along with the authenticated records. The video, however, begins *after* Daniell is lying on the concrete bleeding from his face—i.e., after the initial use of force allegedly occurred. Moreover, after the approximate seven-minute mark, the video stops.

[8] The video footage does not clearly refute Daniell's assertion. *See Scott v. Harris*, 550 U.S. 372, 380 (2007) (holding that the district court did not have to accept the plaintiff's description of his driving where it was "blatantly contradicted by" video from the police car's dash cam); *Logan v. Smith*, 439 F. App'x 798, 800 (11th Cir. 2011) (citing *Pourmoghani-Esfahani v. Gee*, 625 F.3d 1313, 1315 (11th Cir. 2010)) ("In the context of cases involving video

*Id.* Daniell further contends that C.O. Diaz shackled his ankles too tightly, which caused abrasions and permanent scarring.[9] Tr. 2:18:00–:20:38. The next day, on August 16, 2018, Daniell asserts that Assistant Warden House took pictures of his claimed injuries. *Id.*; Compl. 10.

Accepting Daniell's allegations as true, as the Court must at this stage of the proceedings, his factual assertions state a claim sufficient to survive preliminary screening, i.e., an excessive force claim under the Eighth Amendment against Defendants Patrick and Diaz. *See, e.g.*, *Molina v. Esparza*, Civil Action No. 2:19-CV-395, 2020 WL 1958854, at *3–4 (S.D. Tex. Mar. 11, 2020) (recommending prisoner's excessive force claim survive screening where prisoner alleged that, while handcuffed, defendants slammed him against the wall and to the ground and kicked him while he was on the ground, causing injury to his knee that required surgery), *R. & R. adopted by* 2020 WL 1955252 (S.D. Tex. Apr. 23, 2020); *Moore v. Doe*, Civil Action No. 2:17–CV–121, 2017 WL 6949741, at *5 (S.D. Tex. Sept. 14, 2017) (finding prisoner's claim that defendant "assaulted him with a closed first for two minutes while [prisoner] was shackled and strapped to a gurney" survived screening), *R. & R. adopted in part by* 2018 WL 447363 (S.D. Tex. Jan. 17, 2018); *Hudson v. McAnear*, C.A. No. C–09–327, 2011 WL 67199, at *9–10 (S.D. Tex. Jan. 10, 2011) (denying summary judgment in favor of prison guard on prisoner's excessive force claim in part because evidence did not resolve "whether the *degree* of force was appropriate under the circumstances" or if the defendant applied the force "with malicious or sadistic intent" (emphasis in original)).

---

evidence, this Court will accept the video's depiction over the opposing party's account of the facts where the video obviously contradicts that version of the facts."). Because the video does not blatantly contradict Daniell's factual assertion, the Court accepts his account as true for screening purposes.

[9] The video footage reflects that C.O. Afolayan—not C.O. Diaz—applied the leg restraints. As noted, however, Daniell does not sue C.O. Afolayan.

### B. Bystander Liability

Daniell asserts that Sergeant Haynes observed the foregoing incident and did not take sufficient action to stop the use of force. Tr. 2:22:04–:23:05. A prison official's failure to intervene in others' use of excessive force against an inmate may violate the Eighth Amendment and subject the official to § 1983 liability. *Rogers v. Buchanan*, No. 3:12-CV-2458-M-BN, 2015 WL 3439145, at *5 (N.D. Tex. Mar. 27, 2015) (citing *Hale v. Townley*, 45 F.3d 914, 919 (5th Cir. 1995)), *R. & R. adopted with modification by* 2015 WL 3504518 (N.D. Tex. May 28, 2015). To prevail on a bystander liability claim, a plaintiff must establish that an officer: "(1) knows that a fellow officer is violating an individual's constitutional rights; (2) has a reasonable opportunity to prevent the harm; and (3) chooses not to act." *Hamilton v. Kindred*, 845 F.3d 659, 663 (5th Cir. 2017) (internal quotations omitted).

Daniell alleges that Defendant Haynes "allowed officers to use unnecessary excessive force on a mechanically restrained inmate without justification or provocation." Compl. 5. Daniell asserts that "[a]t no time did defendant Haynes order Diaz to stop using the unnecessary force." *Id.* at 9. Accepting Daniell's allegations as true, as the Court must at this phase of the case, his factual assertions state a claim sufficient to survive preliminary screening, i.e., a claim for bystander liability under the Eighth Amendment against Defendant Haynes. *See, e.g., Canales v. Davis*, Civil Action No. 1:20-CV-77, 2020 WL 1018231, at *5–6 (E.D. Tex. Aug. 8, 2019) (recommending denial of defendant's motion to dismiss plaintiff's bystander liability claim, where plaintiff alleged that defendant "stood by as [he] was assaulted" and "did not report the assaults," which supported plaintiff's "allegation that defendant . . . knew the other defendants violated plaintiff's constitutional rights, had a reasonable opportunity to prevent the harm, and chose not to act"), *R. & R. adopted by* 2020 WL 977045 (E.D. Tex. Feb. 21, 2020); *Savoy v. Davis*, Civil Action

No. 14–700–JJB, 2015 WL 1809242, at *2 (M.D. La. Apr. 21, 2015) (denying defendant's motion to dismiss on prisoner's bystander liability claim, where prisoner claimed defendant "stood by and watched" as other defendants "beat him without justification"); *Malone v. City of Fort Worth*, Civil Action No. 4:09–CV–634–Y, 2014 WL 5781001, at *16–17 (N.D. Tex. Nov. 6, 2014) (finding genuine issues of material fact existed as to certain defendants' proximity and duration of their proximity to the use of force thus precluding summary judgment).

### C. Unconstitutional work assignment

"Work is a typical condition of confinement expected of Texas prisoners." *Reaves v. Voglegesang*, Civil Action No. 5:10–CV–044–BG, 2010 WL 8445306, at *4 (N.D. Tex. Nov. 23, 2010), *R. & R. adopted by* 2012 WL 666205 (N.D. Tex. Feb. 29, 2012); *see Walton v. Tex. Dep't of Criminal Justice, Institutional Div.*, 146 F. App'x 717, 718 (5th Cir. 2005) ("Compelling an inmate to work without pay does not violate the Constitution even if the inmate is not specifically sentenced to hard labor."). Prison officials can require prisoners to work absent "deliberate indifference toward their physical condition." *Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir. 1993). To establish a deliberate indifference claim based on an alleged unconstitutional work assignment, a prisoner must show that: (1) "the work significantly aggravated" his medical condition; and (2) "the defendants knew the work would significantly aggravate" his medical condition but ignored such risk. *Reaves*, 2010 WL 8445306, at *4. The prison officials' behavior must rise above "mere negligence." *Jackson v. Cain*, 864 F.2d 1235, 1246 (5th Cir. 1989). Thus, a prisoner must demonstrate that officials knowingly placed him on a work detail that they knew would significantly aggravate his serious medical condition. *Id.*

Daniell maintains that on two separate occasions, C.O.s Cooper, Chance, and Chery forced him to perform work duties despite the medical department having placed him on 45-days' work

restriction due to injuries sustained during the August 15 episode. Tr. 2:26:05–:30:01; Tr. II 2:17:21–:24:12; Compl. 11–14. During the first incident, which Daniell contends occurred August 26, 2018, Daniell states that C.O.s Cooper and Chance forced him to clean showers. Tr. 2:26:05–:30:01. Daniell concedes that his name appeared on the work roster for that day. *Id.*; Tr. II 2:17:21–:19:14. Daniell nevertheless avers that C.O.s Cooper and Chance were present during the original use of force and were therefore aware of his injuries (including a broken wrist), and should have known that he could not work.[10] Concluding his allegations as to the first incident, Daniell maintains that he told C.O.s Cooper and Chance the medical department had placed him on work restriction because of his injuries but they required him to work regardless. Tr. 2:26:05–:30:01; Tr. II 2:17:21–:19:14.

As to the second incident, Daniell claims that on September 14, 2018, C.O. Chery ordered him to sweep and mop the picket and officers' restroom areas in contravention of the medical work restriction. Tr. II 2:19:44–:21:45. Daniell asserts that officials had removed him from the work roster because of a Daniel Unit official's response to a grievance Daniell filed after the first work incident. *Id.* According to Daniell, he also informed C.O. Chery that he could not work due to his injuries, but despite providing such information to Chery and not being listed on the roster, Chery threatened him with disciplinary action if he did not perform the tasks. *Id.* As a result of the two incidents, Daniell claims he suffered additional pain and swelling in his injured wrist and knee. Tr. II 2:21:53–:24:12.

Accepting Daniell's allegations as true, his factual assertions state a claim sufficient to survive preliminary screening, i.e., an Eighth Amendment claim against Defendants Cooper,

---

[10] Daniell also asserts that C.O. Chance transported him to a local hospital following the August 15, 2018, use of force, thus providing further notice of and information about his injuries. Compl. 12.

Chance, and Chery for deliberate indifference with respect to his working conditions. In regard to the first incident, Daniell claims C.O.s Cooper and Chance were present for the use of force (and Chance also transported him to the hospital to receive care after the fact) where Daniell allegedly suffered a broken wrist. Concerning the second incident, Daniell claims that the work roster reflected he had a medical restriction and he so informed C.O. Chery of his injuries, but Chery required Daniell to work regardless. These allegations survive screening. *See, e.g., Smith v. Yarrow*, 78 F. App'x 529, 536 (6th Cir. 2003) (reversing district court's dismissal of prisoner's claim that defendant impermissibly ordered him to move bookshelves, where prisoner claimed that he informed defendant of his health conditions several times and another officer informed defendant of prisoner's condition thereby showing that defendant was aware of prisoner's serious medical condition but required him to work regardless); *Feemster v. Chapa*, Civil Action No. 6:17–CV–39, 2017 WL 6987681, at *6 (S.D. Tex. Dec. 18, 2017) (recommending that prisoner's claim survives screening where defendants required plaintiff to work in contravention of medical restrictions, despite being informed of his restrictions, thereby causing severe pain and cramping), *R. & R. adopted by* 2018 WL 456323 (S.D. Tex. Jan. 13, 2018); *Welch v. Tex. Tech Univ. Health Sci. Ctr.*, Civil Action No. 5:09–CV–133–BG ECF, 2010 WL 2813759, at *3 (N.D. Tex. Feb. 25, 2010) (finding prisoner's allegation that defendant "required him to stand while working, even though [nurse] had informed defendant that [prisoner] needed to sit while working," stated claim for deliberate indifference sufficient to survive screening), *R. & R. adopted by* 2010 WL 2813660 (N.D. Tex. July 16, 2010); *cf. Reeves v. Collins*, 27 F.3d 174, 176 (5th Cir. 1994) (affirming district court's dismissal of prisoner's claim that defendants forced him to work despite prisoner informing them of his medical work restriction, where prisoner did not allege facts showing defendants were aware prisoner's work would seriously aggravate his condition).

Given the timeframe set forth by the district judge in the referral order, it appears prudent to transfer the case back to the district judge for implementation of a scheduling order. Accordingly, it is the **RECOMMENDATION** of the magistrate judge that a scheduling order should be entered, setting dates certain for pretrial deadlines and filing dispositive motions.

It is therefore **ORDERED** that the transfer of this case to the United States Magistrate Judge is terminated and the case is hereby transferred back to the docket of the United States District Judge. This case shall hereinafter be designated as Civil Action Number 5:19-CV-196-H.

## II.   Right to Object

A copy of this Report and Recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this Report and Recommendation must file specific written objections within fourteen days after being served with a copy. *See* 28 U.S.C. § 636(b)(1) (2017); Fed. R. Civ. P. 72(b). To be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's Report and Recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

Dated: May 28, 2020

D. GORDON BRYANT, JR.
UNITED STATES MAGISTRATE JUDGE